(Slip Opinion) OCTOBER TERM, 2012 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LOS ANGELES COUNTY FLOOD CONTROL DISTRICT *v.* NATURAL RESOURCES DEFENSE COUNCIL, INC., ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 11–460.   Argued December 4, 2012—Decided January 8, 2013

Petitioner Los Angeles County Flood Control District (District) operates a "municipal separate storm sewer system" (MS4), a drainage system that collects, transports, and discharges storm water.  Because storm water is often heavily polluted, the Clean Water Act (CWA) and its implementing regulations require certain MS4 operators to obtain a National Pollutant Discharge Elimination System (NPDES) permit before discharging storm water into navigable waters.  The District has such a permit for its MS4.  Respondents Natural Resources Defense Council, Inc. (NRDC) and Santa Monica Baykeeper (Baykeeper) filed a citizen suit against the District and others under §505 of the CWA, 33 U. S. C. §1365, alleging, among other things, that water-quality measurements from monitoring stations within the Los Angeles and San Gabriel Rivers demonstrated that the District was violating the terms of its permit.  The District Court granted summary judgment to the District on these claims, concluding that the record was insufficient to warrant a finding that the MS4 had discharged storm water containing the standards-exceeding pollutants detected at the downstream monitoring stations.  The Ninth Circuit reversed in relevant part.  The court held that the District was liable for the discharge of pollutants that, in the court's view, occurred when the polluted water detected at the monitoring stations flowed out of the concrete-lined portions of the rivers, where the monitoring stations are located, into lower, unlined portions of the same rivers.

*Held*: The flow of water from an improved portion of a navigable waterway into an unimproved portion of the same waterway does not

qualify as a "discharge of a pollutant" under the CWA. See *South Fla. Water Management Dist.* v. *Miccosukee Tribe*, 541 U. S. 95, 109–112 (holding that the transfer of polluted water between "two parts of the same water body" does not constitute a discharge of pollutants under the CWA). The Ninth Circuit's decision cannot be squared with this holding.

The NRDC and Baykeeper alternatively argue that, based on the terms of the District's NPDES permit, the exceedances detected at the monitoring stations sufficed to establish the District's liability under the CWA for its upstream discharges. This argument, which failed below, is not embraced within the narrow question on which certiorari was granted. The Court therefore does not address it. Pp. 3–5.

673 F. 3d 880, reversed and remanded.

GINSBURG, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, THOMAS, BREYER, SOTOMAYOR, and KAGAN, JJ., joined. ALITO, J., concurred in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 11–460

LOS ANGELES COUNTY FLOOD CONTROL DISTRICT PETITIONER *v.* NATURAL RESOURCES DEFENSE COUNCIL, INC., ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[January 8, 2013]

JUSTICE GINSBURG delivered the opinion of the Court.

The Court granted review in this case limited to a single question: Under the Clean Water Act (CWA), 86 Stat. 816, as amended, 33 U. S. C. §1251 *et seq.*, does the flow of water out of a concrete channel within a river rank as a "discharge of a pollutant"? In this Court, the parties and the United States as *amicus curiae* agree that the answer to this question is "no." They base this accord on *South Fla. Water Management Dist.* v. *Miccosukee Tribe*, 541 U. S. 95, 109–112 (2004), in which we accepted that pumping polluted water from one part of a water body into another part of the same body is not a discharge of pollutants under the CWA. Adhering to the view we took in *Miccosukee*, we hold that the parties correctly answered the sole question presented in the negative. The decision in this suit rendered by the Court of Appeals for the Ninth Circuit is inconsistent with our determination. We therefore reverse that court's judgment.

Petitioner Los Angeles County Flood Control District (District) operates a "municipal separate storm sewer

system" (MS4)—a drainage system that collects, trans-
ports, and discharges storm water. See 40 CFR
§122.26(b)(8) (2012). See also §122.26(b)(13) ("*Storm
water* means storm water runoff, snow melt runoff, and
surface runoff and drainage."). Because storm water is
often heavily polluted, see 64 Fed. Reg. 68724–68727
(1999), the CWA and its implementing regulations require
the operator of an MS4 serving a population of at least
100,000 to obtain a National Pollutant Discharge Elimina-
tion System (NPDES) permit before discharging storm
water into navigable waters. See 33 U. S. C. §§1311(a),
1342(p)(2)(C), and (D); 40 CFR §§122.26(a)(3), (b)(4), (b)(7).
The District first obtained a NPDES permit for its MS4 in
1990; thereafter, the permit was several times renewed.
*Natural Resources Defense Council, Inc.* v. *County of Los
Angeles*, 673 F. 3d 880, 886 (CA9 2011).

Respondents Natural Resources Defense Council, Inc.
(NRDC) and Santa Monica Baykeeper (Baykeeper) filed
a citizen suit against the District and several other de-
fendants under §505 of the CWA, 33 U. S. C. §1365. They
alleged, among other things, that water-quality measure-
ments from monitoring stations located within the Los
Angeles and San Gabriel Rivers demonstrated that the
District was violating the terms of its permit.

The District Court granted summary judgment to the
District on these claims. It was undisputed, the District
Court acknowledged, that "data from the Los Angeles
River and San Gabriel River [monitoring] stations indi-
cate[d] that water quality standards ha[d] repeatedly been
exceeded for a number of pollutants, including aluminum,
copper, cyanide, fecal coliform bacteria, and zinc." App. to
Pet. for Cert. 108. But numerous entities other than the
District, the court added, discharge into the rivers up-
stream of the monitoring stations. See *id.*, at 115–116.
See also 673 F. 3d, at 889 (observing that the pollutants of
"thousands of permitted dischargers" reach the rivers).

The record was insufficient, the District Court concluded, to warrant a finding that the District's MS4 had discharged storm water containing the standards-exceeding pollutants detected at the downstream monitoring stations.

The Ninth Circuit reversed in relevant part. The monitoring stations for the Los Angeles and San Gabriel Rivers, the Court of Appeals said, are located in "concrete channels" constructed for flood-control purposes. *Id.*, at 900. See also *id.*, at 889 (describing the monitoring stations' location). Based on this impression, the Court of Appeals held that a discharge of pollutants occurred under the CWA when the polluted water detected at the monitoring stations "flowed out of the concrete channels" and entered downstream portions of the waterways lacking concrete linings. *Id.*, at 900. Because the District exercises control over the concrete-lined portions of the rivers, the Court of Appeals held, the District is liable for the discharges that, in the appellate court's view, occur when water exits those concrete channels. See *id.*, at 899–901.

We granted certiorari on the following question: Under the CWA, does a "discharge of pollutants" occur when polluted water "flows from one portion of a river that is navigable water of the United States, through a concrete channel or other engineered improvement in the river," and then "into a lower portion of the same river"? Pet. for Cert. i. See 567 U. S. \_\_\_ (2012). As noted above, see *supra*, at 1, the parties, as well as the United States as *amicus curiae*, agree that the answer to this question is "no."

That agreement is hardly surprising, for we held in *Miccosukee* that the transfer of polluted water between "two parts of the same water body" does not constitute a discharge of pollutants under the CWA. 541 U. S., at 109–112. We derived that determination from the CWA's text, which defines the term "discharge of a pollutant" to mean

"any *addition* of any pollutant to navigable waters from any point source."  33 U. S. C. §1362(12) (emphasis added). Under a common understanding of the meaning of the word "add," no pollutants are "added" to a water body when water is merely transferred between different portions of that water body.  See Webster's Third New International Dictionary 24 (2002) ("add" means "to join, annex, or unite (as one thing to another) so as to bring about an increase (as in number, size, or importance) or so as to form one aggregate").  "As the Second Circuit [aptly] put it . . . , '[i]f one takes a ladle of soup from a pot, lifts it above the pot, and pours it back into the pot, one has not "added" soup or anything else to the pot.'"  *Miccosukee*, 541 U. S., at 109–110 (quoting *Catskill Mountains Chapter of Trout Unlimited, Inc.* v. *New York*, 273 F. 3d 481, 492 (CA2 2001)).

  In *Miccosukee*, polluted water was removed from a canal, transported through a pump station, and then deposited into a nearby reservoir.  541 U. S., at 100.  We held that this water transfer would count as a discharge of pollutants under the CWA only if the canal and the reservoir were "meaningfully distinct water bodies."  *Id.*, at 112.  It follows, *a fortiori*, from *Miccosukee* that no discharge of pollutants occurs when water, rather than being removed and then returned to a water body, simply flows from one portion of the water body to another.  We hold, therefore, that the flow of water from an improved portion of a navigable waterway into an unimproved portion of the very same waterway does not qualify as a discharge of pollutants under the CWA.  Because the decision below cannot be squared with that holding, the Court of Appeals' judgment must be reversed.[1]

————————

  [1] The NRDC, Baykeeper, and the United States contend—contrary to the District—that the Court of Appeals understood that no discharge of pollutants occurs when water flows from an improved into an unim-

   The NRDC and Baykeeper urge that the Court of Appeals reached the right result, albeit for the wrong reason. The monitoring system proposed by the District and written into its permit showed numerous instances in which water-quality standards were exceeded. Under the permit's terms, the NRDC and Baykeeper maintain, the exceedances detected at the instream monitoring stations are by themselves sufficient to establish the District's liability under the CWA for its upstream discharges. See Brief for Respondents 33–62.[2]  This argument failed below. See 673 F. 3d, at 898, 901; App. to Pet. for Cert. 100–102.  It is not embraced within, or even touched by, the narrow question on which we granted certiorari. We therefore do not address, and indicate no opinion on, the issue the NRDC and Baykeeper seek to substitute for the question we took up for review.

*     *     *

   For the reasons stated, the judgment of the Court of Appeals for the Ninth Circuit is reversed, and the case is remanded.

*It is so ordered.*

JUSTICE ALITO concurs in the judgment.

————————

proved portion of a navigable waterway.  They suggest that the Court of Appeals misperceived the facts, erroneously believing that the monitoring stations for the Los Angeles and San Gabriel Rivers "were sampling water from a portion of the MS4 that was distinct from the rivers themselves and from which discharges through an outfall to the rivers subsequently occurred."  Brief for United States as *Amicus Curiae* 18. See also Brief for Respondents 30–31 ("The court of appeals' statements suggest it believed the monitoring stations sampled polluted stormwater from the District's MS4 before, not after, discharge to the Los Angeles and San Gabriel Rivers.").  Whatever the source of the Court of Appeals' error, all parties agree that the court's analysis was erroneous.

   [2]Shortly before oral argument in this case, a renewed permit was approved for the District's MS4.  Unlike the District's prior permit, which required only instream monitoring, the renewed permit requires end-of-pipe monitoring at individual MS4 discharge points.  See *id.*, at 20–21; Reply Brief 5, n. 2.